## CAMPBELL v. CONTINENTAL CASUALTY CO. OF CHICAGO.

### No. 13711.

United States Court of Appeals
Eighth Circuit.

Nov. 16, 1948.

Harry A. Hall and Anthony P. Nugent, both of Kansas City, Mo., for appellant.

Harry P. Thomson, Jr., and Henry M. Shughart, both of Kansas City, Mo., for appellee.

Before THOMAS, JOHNSEN, and COLLET, Circuit Judges.

JOHNSEN, Circuit Judge.

The suit is one on a policy of liability insurance, to recover from the insurer the amount which the insured had been obliged to pay in satisfaction of a default judgment against him, obtained by a third party in state court, for damages from an automobile collision. The insured also sought to recover a penalty for vexatious delay and attorney's fees. The District Court, on a trial without a jury, gave judgment for the insurer, and the insured has appealed. Jurisdiction rests on diversity of citizenship, and the case is governed by Missouri law.

The policy, under the head of "Conditions", contained a requirement that the insured should give written notice of accident as soon as practicable, and the following further provisions: "If claim is made or suit brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative." "The insured shall cooperate with the company * * *." "No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy * * *."

No question of failure to give notice of accident or notice of claim against the insured is involved. The trial court rested its decision on the grounds that the insured had breached the conditions as to forwarding of summons and other process and as to cooperation, to the prejudice of the insurer, and so could not recover.

The court made findings that, in the action in which the default judgment was entered, summons and copy of petition had been left by the sheriff with the insured's mother, at what the return on the writ stated was the insured's usual place of abode; that these papers were turned over

by the mother to the manager of the insured's business, who among other things had the duty of handling all insurance accident matters for the business; that the manager put the suit papers in the office insurance file, without forwarding them to the insurer; that several months later default judgment was entered against the insured and the driver of his truck, who had also been made a defendant, which judgment the state court refused to vacate; and that the insurer had no notice of the suit "as to John Campbell" (the insured), until after the entry of the default judgment.

The insured's principal contention here is that he was not required to forward his summons and copy of petition to the insurer, because, he says, his truck driver, who under the omnibus coverage clause in the policy [1] also was an insured, had previously delivered his summons and copy of petition to an employee in the insurer's office and this constituted a sufficient compliance as to both of them.

The evidence can not be said to establish unequivocally that the driver actually had delivered his summons and copy of petition to the insurer, and the court made no finding as to whether he had in fact done so or not. The driver testified that he had, but the record shows that in the proceeding in state court to have the judgment vacated he had not been quite so definite in his testimony. It is true that there are circumstances in the record which could be accepted as corroborative that the summons and copy of petition had been left at the insurer's office. Against this, the two secretaries in the insurer's office testified that they had no recollection of having received any such papers and, if they had received them, they would have turned them over to the claims manager in accordance with their duty and regular practice. And the claims manager stated that no such papers had been turned over to him by anyone and that he never had any notice of a suit having been brought by the third party until after the default judgment was entered.

But we need not further consider the evidence on this question. Assuming for purposes of the insured's contention that the driver did deliver his summons and copy of petition to the insurer, this still would not have informed the insurer whether the insured himself had been served with process and brought into court. The record shows that the insured was not in fact served until some days after the driver. On the evidence, neither the insured nor his manager nor his driver knew at the time that the driver claims to have delivered his suit papers to the insurer whether any service then had been or ever would be attempted to be made on the insured. None of them undertook to notify the insurer in any way thereafter that such service had been made. The driver's suit papers might have informed the insurer that the insured had been named as a defendant in the action, but as we have stated they would not advise it that the insured had been brought into court. And neither the language of the policy, nor the construction made by any court of such provisions as it contains, has imposed on the insurer, merely because it knows that an insured has been named as a defendant in an action, the sentry duty of tracking back and forth to the court house to keep a check on if or when he may be served with process.

Under the trial court's finding, which the evidence clearly sustains, the insurer never knew, until after the default judgment was entered, that the insured had been brought into court by the service of process. The prejudice to the insurer's right from the failure to have forwarded the summons, or otherwise to have given adequate notice that such service had been made, is in the situation indisputable. Indeed, even beyond the insurer's deprivation of the opportunity to defend the action, if the facts were as set out in the insured's accident report and in the police report, it would seem that there could have been no actual liability to the third party.

Whether the delivery by the driver of his suit papers to the insurer, if the in-

---

[1] The omnibus coverage clause conventionally provided: "The unqualified word 'insured' includes the named insured and * * * also includes any person while using the automobile * * * with the permission of the named insured."

surer subsequently had been informed that process also had been served upon the insured, would have constituted under Missouri law a sufficient compliance with the provision of the policy as to forwarding of summons or other process, in the absence of a request for the forwarding of the additional summons at the time the insurer was notified of its service, it is not necessary for us to determine. There is no decision by the Missouri Supreme Court upon the specific question, although two Missouri Courts of Appeals have apparently taken the view that the provision in a liability policy for the forwarding of every summons or other process requires a strict compliance. See Donlon v. American Motorists Ins. Co., Mo.App., 147 S.W.2d 176, 149 S.W.2d 378; Neville v. Wahl, 228 Mo. App. 49, 65 S.W.2d 123. Cases from other jurisdictions also are cited in the insurer's brief, which hold to the same effect.

The insured, however, relies primarily upon three decisions of the Ninth Circuit Court of Appeals, in support of his contention that delivery by the driver of his summons and copy of petition to the insurer would be a sufficient compliance as to both the driver and the insured with the provision for forwarding summons or other process—namely, Slavens v. Standard Accident Ins. Co., 9 Cir., 27 F.2d 859; Royal Indemnity Co. v. Morris, 9 Cir., 37 F.2d 90; Indemnity Ins. Co. of North America v. Forrest, 9 Cir., 44 F.2d 465.

The Slavens case held that the fact that the driver of the insured's car, using it with permission and covered under the omnibus clause, had not himself given the insurer "notice of the accident immediately after its occurrence, with the fullest information obtainable, and full particulars of any claim made against him on account thereof," would not entitle the insurer to deny liability on that ground to a third party as to a judgment recovered by the latter against the driver, where both the third party and the insured had furnished the insurer with immediate notice of the accident and all the information contemplated by the policy. 27 F.2d at page 861.

The Morris case similarly held that, where the insured and the plaintiff in a suit against the driver of the car had sent the insurer copies of the complaint and the summons served upon the driver, "it is no defense (to an action on the policy, after the recovery of a judgment against the driver, by the plaintiff in that suit) that (the driver) did not in person forward copies of the complaint and process." 37 F.2d at page 91.

In the Forrest case, Mrs. Kitredge, the insured, and Hooper, who was using the car with her permission at the time of the accident, had been sued jointly, and Mrs. Kitredge had promptly forwarded to the insurer the process and pleadings served upon her. Dismissal was later made of the claim of liability against Mrs. Kitredge, and a judgment was taken against Hooper alone. In an action by the plaintiffs against the insurer, under the omnibus clause of the policy, to collect the amount of the judgment against Hooper, one of the defenses set up was that Hooper "failed to forthwith forward to (the insurer) the process and pleadings served on him." The court held that the forwarding by Mrs. Kitredge of the process and pleadings served on her, together with the notice which the insurer also received of the service made upon Hooper, was in the situation "a sufficient compliance with the requirements of the policy in that regard." The opinion says: "While the receipt of the process and pleadings served on the codefendant gave no notice that service had also been made upon Hooper, * * * the appellant (insurer) had actual notice of the service of process on Hooper * * * and was given full opportunity to defend in his behalf, but refused to do so on the ground that it had a complete defense to the action. Under such circumstances, the failure to forward the process and pleadings constitutes no defense * * *." 44 F.2d at page 466.

These cases do not reach the facts of the present situation. They are not authority for the proposition that an insurer can be held liable for a default judgment against an insured, because a co-insured has forwarded to the insurer the process served upon him as a co-defendant, where the insurer never has had any notice of the service of process upon the insured against whom the judgment is taken. On

the contrary, the Forrest case, which is the closest in point, expressly recognizes that the mere receipt of the process and pleadings served upon one defendant would not give the insurer notice that service also had been made upon another. Without an estoppel or waiver (which does not here exist), there is no decision in Missouri or elsewhere, so far as we have been able to discover, which permits an insurer to be held liable to an insured on a standard policy of liability insurance for a default judgment against the insured, where the insured has failed to forward to the insurer the process served upon him in the action and the insurer never has had any notice that such service has been made, so as to have afforded it the opportunity to defend.

■ The insured makes the further contention that the insurer still should be held liable on the policy on the ground that the insured's failure to forward the summons and copy of petition personally was excusable and that the fault of his manager in failing to forward the suit papers was not properly chargeable against him. Briefly, the argument is that he did not himself know of the service of process made upon him by leaving the summons and copy of petition with his mother; that neither his mother nor his manager ever told him about the service; that his mother turned over the papers to his manager when the latter went out to assist her with some of her personal tax matters; that in thus going out to assist his mother his manager was engaged in a personal mission and not an errand of the business and the suit papers were delivered to him outside the course of the insured's business; and that the insured therefore was not chargeable with any knowledge or acts of his manager in relation to them.

The trial court disposed of this contention by holding that, when the manager took the suit papers to the office and placed them in the insurance file, he was acting within the scope of his authority and duty and the insured was bound by his acts. As we have previously indicated, the manager had the duty of handling all accident matters of the business with the insurer under the policy. The insured himself testified:

"Q. Now, was it Mr. Eisberg's duty to forward on to the insurance company any notices or reports of accident or any papers received by him pertaining to the insurance? A. I would say that generally speaking, yes.

"Q. And in acting in that capacity, was he acting as your representative? A. He was acting as my office manager."

The trial court was entitled to find that when the manager undertook to deal with the suit papers in relation to the insured's business, after they came into his possession from the mother, he was dealing with them within the scope of his authority and duty, and necessarily, as in the case of any agency, the insured was chargeable with and bound by his acts. Cf. Fruin-Colnon Contracting Co. v. Commercial Casualty Ins. Co., 8 Cir., 32 F.2d 425.

■ The insured has argued also that his failure to forward the summons and copy of petition should be excused because of his ignorance of the policy requirements. It appears that the insured's truck was one which he had leased on an annual basis from Hertz Drivurself Stations, Inc., and that Hertz arranged for the insurance policy and kept possession of it, with the insured being furnished a certificate by the insurer showing the policy number, the period of coverage, the description of the truck, and the insured's name as being an insured under the policy. The certificate further recited that "Nothing herein contained shall be considered as in any wise modifying any provision of said policiees." The insured thus knew that the provisions of the policy itself were controlling of the coverage conditions and rights. If he chose under his arrangement with Hertz to leave the policy with the latter and not familiarize himself with its conditions and rights, that would hardly be a legal excuse for any ignorance as against the insurer. And in any event, ignorance is not ordinarily an excuse for an insured's failure to comply with a fundamental requirement of a policy of liability insurance, at least where the insurer

674

has been materially prejudiced by the failure.

But beyond this in the present situation, whatever may have been the insured's own ignorance of his obligation under the policy (and it is a bit difficult to believe that any commercial insured does not basically know that it is necessary to advise his insurer when he has been served with a summons), that was not the reason for his manager's failure to forward the summons and copy of petition to the insurer. The manager knew that the insurer had to be given notice of the service of process upon an insured, as indicated by the fact that he sent the driver to the insurer's office with the latter's suit papers. His explanation for placing the summons and copy of petition served upon the insured in the office file was that he felt that the insurer already sufficiently knew about the situation. He overlooked the fact that the insurer had had no notice from any source that the insured had been served with process. His acts and their consequences were in law those of the insured.

Affirmed.